**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CRIMINAL NO. 24-00137-TFM-10** |
| | ) | |
| **TYRONE DANSBY** | ) | |

# PLEA AGREEMENT

The defendant, **TYRONE DANSBY**, represented by his counsel, and the United States of America have reached a plea agreement in this case, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the terms and conditions of which are as follows:

## RIGHTS OF THE DEFENDANT

1. The defendant understands his rights as follows:

   a. To be represented by an attorney;

   b. To plead not guilty;

   c. To have a trial by an impartial jury;

   d. To confront and cross-examine witnesses and to call witnesses and produce other evidence in his defense; and

   e. To not be compelled to incriminate himself.

## WAIVER OF RIGHTS AND PLEA OF GUILTY

2. The defendant waives rights b through e, listed above, and pleads guilty to Count Two of the Indictment, charging a violation of Title 21, United States Code, Section 846 (Conspiracy to Possess with Intent to Distribute Cocaine).

3. The defendant understands that the statements he makes under oath in the plea of guilty must be completely truthful and that he can be prosecuted for making false

statements or perjury, or receive a perjury enhancement at sentencing, for any false statements he makes intentionally in this plea of guilty.

4. The defendant expects the Court to rely upon his statements here and his response to any questions that he may be asked during the guilty plea hearing.

5. The defendant is not under the influence of alcohol, drugs, or narcotics. He is certain that he is in full possession of his senses and is mentally competent to understand this Plea Agreement and the guilty plea hearing that will follow.

6. The defendant has had the benefit of legal counsel in negotiating this Plea Agreement. He has discussed the facts of the case with his attorney, and his attorney has explained to the defendant the essential legal elements of the criminal charge that has been brought against him. The defendant's attorney has also explained to the defendant his understanding of the United States' evidence and the law as it relates to the facts of his offense.

7. The defendant understands that the United States has the burden of proving each of the legal elements of the criminal charge beyond a reasonable doubt. The defendant and his counsel have discussed possible defenses to the charge. The defendant believes that his attorney has represented him faithfully, skillfully, and diligently, and he is completely satisfied with the legal advice of his attorney.

8. A separate document, entitled Factual Resume, will be submitted to the Court as evidence at the guilty plea hearing. The Factual Resume is incorporated by reference into this Plea Agreement. The defendant and the United States agree that the Factual Resume is true and correct. Alterations to the Plea Agreement or

Factual Resume initialed only by the defendant and his counsel are not part of this agreement and are not agreed to by the United States.

9. This plea of guilty is freely and voluntarily made and is not the result of force, threats, promises, or representations, apart from those representations set forth in this Plea Agreement. There have been no promises from anyone as to the particular sentence that the Court will impose. The defendant is pleading guilty because he is guilty.

10. The defendant also knowingly and voluntarily waives all rights, whether asserted directly or through a representative, to receive from the United States after sentencing any further records, reports, or documents pertaining to the investigation or prosecution of this matter. This waiver includes, but is not limited to, rights under the Freedom of Information Act and the Privacy Act of 1974.

**PENALTY**

11. The maximum penalty the Court could impose as to Count Two of the Indictment is:

a. Life imprisonment, with a mandatory minimum term of ten (10) years' imprisonment;

b. A fine not to exceed $10,000,000;

c. A term of supervised release of life, with a mandatory minimum term of supervised release of five (5) years, which would follow any term of imprisonment. If the defendant violates the conditions of supervised release, he could be imprisoned for the entire term of supervised release;

d. A mandatory special assessment of $100.00; and

e. Such restitution as may be ordered by the Court.

## SENTENCING

12. The Court will impose the sentence in this case. The United States Sentencing Guidelines are advisory and do not bind the Court. The defendant has reviewed the application of the Guidelines with his attorney and understands that no one can predict with certainty what the sentencing range will be in this case until after a pre-sentence investigation has been completed and the Court has ruled on the results of that investigation. The defendant understands that at sentencing, the Court may not necessarily sentence the defendant in accordance with the Guidelines. The defendant understands that he will not be allowed to withdraw his guilty plea if the advisory guideline range is higher than expected, or if the Court departs or varies from the advisory guideline range.

13. The defendant understands that this Plea Agreement does not create any right to be sentenced in accordance with the Sentencing Guidelines, or below or within any particular guideline range, and fully understands that determination of the sentencing range or guideline level, or the actual sentence imposed, is solely the discretion of the Court.

14. The United States will provide all relevant sentencing information to the Probation Office for purposes of the pre-sentence investigation. Relevant sentencing information includes, but is not limited to, all facts and circumstances of this case and information concerning the defendant's conduct and background.

15. Both the defendant and the United States are free to allocute fully at the time of sentencing.

16. The defendant agrees to tender $100.00 to the U.S. District Court Clerk in satisfaction of the mandatory special assessment in this case. The United States reserves the right to withdraw any favorable recommendations it may agree to within this document if the defendant fails to pay the special assessment prior to or at the time of his sentencing.

**RESTITUTION**

17. Pursuant to 18 U.S.C. §§ 3556 and 3663A, restitution is mandatory. The defendant agrees to make full restitution in an amount to be determined by the Court at sentencing and as to all relevant conduct regardless of whether it relates to the count of conviction.

**FORFEITURE**

18. The defendant agrees to forfeit to the United States any right, title, and interest in all assets subject to forfeiture under the notice of forfeiture contained in the charging document, including property specified in any bill of particulars and property previously seized by the government for administrative, civil, or criminal forfeiture. The defendant further consents to the filing of a motion for a preliminary order forfeiting such property and any dollar amount specified in the notice of forfeiture or bill of particulars, and the defendant confesses the requisite nexus between the property and the charge of the conviction. The defendant hereby withdraws any petition for remission or claim for such property and further waives any right to contest or appeal the government's forfeiture proceedings for any reason, including on grounds that the forfeiture constitutes an unconstitutionally

excessive fine or punishment, and in any manner, including by claim, petition, appeal or collateral attack.

## FINANCIAL OBLIGATIONS

19. The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court. In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the defendant agrees to disclose fully all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party.

## UNITED STATES' OBLIGATIONS

20. The United States will not bring any additional charges against the defendant related to the facts underlying the Indictment and will move to dismiss any remaining charges against the defendant once sentence is imposed in this case. This agreement is limited to the United States Attorney's Office for the Southern District of Alabama and does not bind any other federal, state, or local prosecuting authorities.

21. The United States will recommend to the Court that the defendant be sentenced at the low end of the advisory sentencing guideline range as determined by the Court.

## APPLICATION OF USSG § 5K1.1 AND/OR FED. R. CRIM. P. 35

22. The defendant understands and agrees that he has no right to cooperate, and that the decision whether to allow him to cooperate is reserved solely to the United States in the exercise of its discretion. If the United States agrees to allow

the defendant to cooperate, and if the defendant agrees to cooperate, the following terms and conditions apply:

a. The defendant shall fully, completely, and truthfully respond to all questions put to him by law enforcement authorities regarding the underlying facts of the offense with which he is charged, as well as the underlying facts of any criminal offense(s), state or federal, of which he has information or knowledge.

b. The defendant acknowledges that he understands that he shall provide truthful and complete information regarding any offense about which he has knowledge or information regardless of whether law enforcement authorities question him specifically about any such offense. This provision requires the defendant to divulge all information available to him even when law enforcement authorities do not know about the defendant's involvement, knowledge or information relating to any particular offense. This requirement extends to any and all persons about whom the defendant has such knowledge or information.

c. The defendant agrees to cooperate completely with all law enforcement authorities in any matters to which his cooperation may be deemed relevant by any law enforcement authority. The defendant agrees to fully comply with all instructions from law enforcement authorities regarding the specific assistance he shall provide. This includes, but is not limited to, consenting to monitored and/or recorded telephone conversations, participating in undercover operations, testifying completely and truthfully before any

grand jury, at any pre-trial proceeding, during any trial, and any post-trial proceeding.

d. If the United States deems it necessary, the defendant may be required to take a polygraph examination(s) which will be administered by a government polygrapher. The defendant agrees that the results of any polygraph examination may be used by the United States in its evaluation of whether there has been substantial assistance, and are admissible at sentencing to rebut an assertion by the defendant of bad faith or unconstitutional motive on the part of the United States.

e. The defendant agrees to turn over to the United States any and all documents, tapes and other tangible objects which are in his possession or under his control and which are relevant to his participation in and knowledge of criminal activities, regardless of whether it relates to the charged offense. This obligation is a continuing one and includes materials that the defendant may acquire, obtain or have access to after the execution of this agreement.

f. The defendant also agrees to identify the assets of any other person which were obtained through or facilitated the defendant's illegal activities or the illegal activities of another.

g. If the defendant provides full, complete, truthful and substantial cooperation to the United States, which results in substantial assistance to the United States in the investigation or prosecution of another criminal offense, a decision specifically reserved by the United States in the exercise

of its sole discretion, then the United States agrees to move for a downward departure in accordance with Section 5K1.1 of the United States Sentencing Guidelines or Rule 35 of the Federal Rules of Criminal Procedure, whichever the United States deems applicable. The United States specifically reserves the right to make the decision relating to the extent of any such departure request made under this agreement based upon its evaluation of the nature and extent of the defendant's cooperation. The defendant understands that the United States will make no representation or promise with regard to the exact amount of reduction, if any, the United States might make in the event that it determines that the defendant has provided substantial assistance. The defendant understands that a mere interview with law enforcement authorities does not constitute substantial assistance. The defendant also understands that, should he provide untruthful information to the United States at any time, or fail to disclose material facts to the United States at any time, or commits a new criminal offense, the United States will not make a motion for downward departure. If the defendant's effort to cooperate with the United States does not amount to substantial assistance as determined solely by the United States, the United States agrees to recommend that the defendant receive a sentence at the low end of the advisory guideline range.

h. The United States and the defendant agree that any breach of this agreement by the defendant, including but not limited to committing a new offense, failing to cooperate, intentionally withholding information, giving false

information, committing perjury, failing to identify assets obtained by him from his illegal activities or obtained by others associated with him or of which he has knowledge, refusing to take a polygraph examination, failing a polygraph examination, or refusing to testify before the grand jury or at any judicial proceeding, would:

(1) permit the United States to reinstate and proceed with prosecution on any other charges arising from the matters underlying the Indictment; and

(2) permit the United States to initiate and proceed with the prosecution on any other charges arising from a breach of this agreement. The United States will not be limited, in any respect, in the use it may make against the defendant of any information provided by the defendant during his breached cooperation. Such breach will constitute a waiver of any claim the defendant could make under the United States Constitution, the Federal Rules of Evidence, the Federal Rules of Criminal Procedure, or any statute or case law by which the defendant seeks to suppress the use of such information or any evidence derived from such information.

i. Nothing in this agreement shall protect the defendant in any way from prosecution for any offense committed after the date of this agreement, including perjury, false declaration, false statement, and obstruction of justice, should the defendant commit any of these offenses during his

cooperation. The defendant acknowledges and agrees that the information that he discloses to the United States pursuant to this agreement may be used against him in any such prosecution.

j. The United States and the defendant agree that the defendant will continue his cooperation even after he is sentenced in the instant matter. His failure to continue his cooperation will constitute a breach of this agreement, and the defendant agrees that under such conditions, the United States will be free to reinstate the charges and the prosecution of the charges in the Indictment, which are to be dismissed in accordance with this agreement. Under these circumstances, the defendant expressly waives any rights he may have under the statute of limitations and the speedy trial provisions.

## LIMITED WAIVER OF RIGHT TO APPEAL AND WAIVER OF COLLATERAL ATTACK

23. As part of the bargained-for exchange represented in this plea agreement, and subject to the limited exceptions below, the defendant knowingly and voluntarily waives the right to file any direct appeal or any collateral attack, including a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. Accordingly, the defendant will not challenge his guilty plea, conviction, or sentence in any district court or appellate court proceedings.

a. **EXCEPTIONS.** The defendant reserves the right to timely file a direct appeal challenging:

(1) any sentence imposed in excess of the statutory maximum;

(2) any sentence which constitutes an upward departure or variance from the advisory guideline range.

The defendant also reserves the right to claim ineffective assistance of counsel in a direct appeal or § 2255 motion.

24. If the United States files a notice of appeal and such appeal is authorized by the Solicitor General, the defendant is released from the appellate waiver.

25. The defendant further reserves the right to timely move the district court for an amended sentence under 18 U.S.C. § 3582 in the event of a future retroactive amendment to the Sentencing Guidelines which would affect the sentence.

26. If the defendant receives a sentence within or below the advisory guideline range, this plea agreement shall serve as the defendant's express directive to defense counsel to timely file a "Notice of Non-Appeal" following sentencing, signed by the defendant.

## VIOLATION OF AGREEMENT

27. The defendant understands that if he breaches any provision of this Plea Agreement, the United States will be free from any obligations imposed by this agreement, but all provisions of the agreement remain enforceable against the defendant. In the exercise of its discretion, the United States will be free to prosecute the defendant on any charges of which it has knowledge. In such event, the defendant agrees not to assert any objections to prosecution that he might have under the Sixth Amendment and/or Speedy Trial Act.

28. In addition, if the defendant is released from detention prior to sentencing, he understands that the United States will no longer be bound by this agreement if he

violates any condition of his release prior to sentencing or prior to serving his sentence after it is imposed.

**ENTIRETY OF AGREEMENT**

29. This document is the complete statement of the agreement between the defendant and the United States and may not be altered unless done so in writing and signed by all the parties.

Respectfully submitted,

KEITH A. JONES
ACTING UNITED STATES ATTORNEY

Date: February 23, 2025

Justin D. Roller
Assistant United States Attorney

Date: 2-24-25

Kasee S. Heisterhagen
Assistant United States Attorney
Deputy Chief, Criminal Division

I have consulted with my counsel and fully understand all my rights with respect to the offense charged in the Indictment pending against me. I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand this agreement, and I voluntarily agree to it. I hereby stipulate that the Factual Resume, incorporated herein, is true and accurate in every respect, and that had the matter proceeded to trial, the United States could have proved the same beyond a reasonable doubt.

Date: 5/2/25

Tyrone Dansby
Defendant

I am the attorney for the defendant. I have fully explained his rights to him with respect to the offense charged in the Indictment in this matter. I have carefully reviewed every part of this Plea Agreement with him. To my knowledge, his decision to enter into this agreement is an informed and voluntary one. I have carefully reviewed the Factual Resume, incorporated herein, with the defendant and to my knowledge, his decision to stipulate to the facts is an informed, intelligent and voluntary one.

Date: 5/2/25

Neil Stewart Hanley
Attorney for Defendant

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CRIMINAL NO. 24-00137-TFM-10** |
| | ) | |
| **TYRONE DANSBY** | ) | |

**FACTUAL RESUME**

The defendant, **TYRONE DANSBY ("DANSBY")**, admits the allegations of Count Two of the Indictment.

**ELEMENTS OF THE OFFENSE**

**DANSBY** understands that in order to prove a violation of Title 21, United States Code, Section 846, as charged in Count Two of the Indictment, the United States must prove:

First: two or more people in some way agreed to try to accomplish a shared and unlawful plan, the object of which was to possess with intent to distribute cocaine; and

Second: the defendant knew the unlawful purpose of the plan and willfully joined in it.

**OFFENSE CONDUCT**

**DANSBY** admits in open court and under oath that the following statement is true and correct and constitutes evidence in this case. This statement of facts is provided solely to assist the Court in determining whether a factual basis exists for **DANSBY's** plea of guilty. The statement of facts does not contain each and every fact known to **DANSBY** and to the United States concerning the defendant's involvement in the charges set forth in the plea agreement. All dates, times, amounts, and locations referenced below are approximations.

**Overview**

From at least October 2021, and continuing through March 2024, the exact dates being unknown, in the Southern District of Alabama and elsewhere, **DANSBY** knowingly and intentionally conspired with his codefendants named in Count Two of the Indictment, and with other persons, to knowingly and intentionally possess with intent to distribute cocaine, a schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846. **DANSBY** admits that he knew the unlawful purpose of the plan to possess with intent to distribute cocaine and willfully joined in it. **DANSBY** further admits that the quantity of cocaine attributable to him in the conspiracy is more than five kilograms, and thus he is subject to the penalty provisions of Title 21, United States Code, Section 841(b)(1)(A).

At all times alleged in the Indictment, **DANSBY** was a member of a drug-trafficking organization ("DTO") that distributed various drugs, including cocaine, in the Mobile, Alabama area. **DANSBY** was a distributor of cocaine and a customer of codefendant Braxton A. Thomas ("Thomas"), one of the leaders of the DTO. Law enforcement captured **DANSBY** communicating with Thomas on numerous occasions via court-authorized Title III interceptions of phone calls regarding drug-dealing activities in furtherance of the DTO's mission.

**Feb. 2024: agents intercept drug-related communications between DANSBY, Thomas, and others, and conduct related surveillance**

On February 3, 2024, agents surveilled Thomas, who had several intercepted phone calls with one of his Texas-based cocaine couriers, codefendant Jose Manuel Lamas, Jr. ("Lamas"). In those recorded calls, agents learned that Lamas would be traveling from Houston, Texas to Mobile the next morning. At 11:49 pm on February 3, 2024, Thomas called **DANSBY**, told him the "dope" was here, and advised, "we'll just do it in the morning." **DANSBY** acknowledged and told Thomas he would wait for him to call so they could consummate a cocaine transaction.

The next morning, starting at 9:00 am on February 4, 2024, Thomas and **DANSBY** exchanged several phone calls about meeting up to conduct a cocaine transaction. Agents surveilled Thomas drive to **DANSBY's** residence in Mobile, arriving at 9:56 am. At 10:16 am, after conducting a cocaine transaction with **DANSBY**, Thomas left **DANSBY's** residence. A minute later, **DANSBY** left the residence driving his black 2019 Ford F-150 King Ranch Super Crew 4X4, Vehicle Identification Number 1FTEW1E4XKFC29114 (the "Ford F-150"). On multiple occasions throughout the conspiracy to which **DANSBY** is pleading guilty, agents surveilled **DANSBY** using the Ford F-150 to meet Thomas to conduct drug transactions and other activities in furtherance of the DTO's mission.

Later, on February 26, 2024, agents surveilled Thomas meeting with another one of his cocaine suppliers at a gas station in Mobile. Agents then watched Thomas travel to **DANSBY's** business in Prichard, Alabama, where Thomas and **DANSBY** conducted a cocaine transaction. Agents intercepted several phone calls between Thomas and **DANSBY** about meeting up to conduct this transaction.

The next day, February 27, 2024, agents intercepted several calls over Lamas's phone regarding his efforts to collect money from drug customers. In one such call, Lamas told an individual that his "tab" (drug debt) was $11,850. In another call, Lamas told an individual that the price for a kilogram of cocaine was $10,500.

**Mar. 2024: agents conduct additional surveillance and seize 3.49 kilograms of bulk cocaine from Thomas's courier**

On March 10, 2024, at 9:40 am, Thomas called **DANSBY** and informed him that he was "waiting on big boy [Lamas]" to bring a load of bulk cocaine. Thomas told **DANSBY** that he would let him know when Lamas arrived. Thomas also called various other coconspirators to let them know the details of Lamas's expected arrival with bulk cocaine.

GPS data from Lamas's phone showed that he was in the area of the Loves truck stop located at 8400 County Farm Road in Mobile. At 2:13 pm on March 10, 2024, agents consensually approached Lamas, who was sitting inside his semitruck at the Loves. Agents asked Lamas for permission to run a drug-detection K-9 around the truck for a free-air sniff, to which Lamas agreed. The K-9 indicated for the presence of narcotic odor near the driver and passenger doors of the truck. Agents then asked Lamas for consent to search the truck, which he granted.

During the search, agents found 3.49 kilograms of cocaine concealed behind the dash of the truck, which agents removed with a screwdriver. Agents arrested Lamas and charged him with cocaine trafficking. A chemist with the Drug Enforcement Administration Southeast Laboratory tested and confirmed that the cocaine was, in fact, cocaine with a net weight of 3.49 kilograms, which had been destined for Thomas to distribute to **DANSBY** and others.

**Sept. 2024: DANSBY admits his role in the DTO**

On September 19, 2024, agents conducted a post-*Miranda* interview of **DANSBY**. During that interview, **DANSBY** admitted that he was "partners" with Thomas in the DTO. **DANSBY** said he would go through Thomas to obtain bulk cocaine, and typically bought 4.5 ounces of cocaine at a time for redistribution in Mobile. **DANSBY** said he had never met the Mexican truck driver (Lamas) from whom Thomas obtained bulk cocaine, since Thomas dealt directly with Lamas. **DANSBY** acknowledged that he was on federal supervised release for a prior federal cocaine-trafficking conspiracy conviction at the time he committed the criminal acts detailed in this Factual Resume. *See United States* v. *Dansby*, No. 20-cr-107-KD (S.D. Ala.).

**Admission of elements, sentencing agreements, and forfeiture**

As part of his guilty plea in this case, **DANSBY** admits that (1) two or more people in some way agreed to try to accomplish a shared and unlawful plan, the object of which was to possess

with intent to distribute cocaine; and (2) he knew the unlawful purpose of the plan and willfully joined in it. The parties agree for sentencing purposes that **DANSBY** should be held responsible for more than 15 kilograms but less than 50 kilograms of cocaine, generating a base offense level of 32. *See* U.S.S.G. § 2D1.1(c)(4). **DANSBY** agrees that the Ford F-150 is forfeitable to the United States as property used, in any manner or part, to commit, or to facilitate the commission of, the conspiracy to which he is pleading guilty. *See* Doc. 168.

AGREED TO AND SIGNED.

Respectfully submitted,

KEITH A. JONES
ACTING UNITED STATES ATTORNEY

Date: February 23, 2025

Justin D. Roller
Assistant United States Attorney

Date: 2-24-25

Kasee S. Heisterhagen
Assistant United States Attorney
Deputy Chief, Criminal Division

Date: 5/2/25

Tyrone Dansby
Defendant

Date: 5/2/25

Neil Stewart Hanley
Attorney for Defendant